* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their *Page 2 
representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The employee at issue in these proceedings is Cheryl T. Jarmon.
2. The employer at issue in these proceedings is Grady's Wholesale Florist.
3. North Carolina Insurance Guaranty Association (hereinafter referred to as "Defendant-Carrier") provided workers' compensation insurance coverage at all times relevant to these proceedings.
4. The parties are subject to and are bound by the North Carolina Workers' Compensation Act.
5. The North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings, and all parties are properly named in these proceedings.
6. Plaintiff received $331.25 as payment of total disability benefits, at the rate of $220.84 since November 9, 1999.
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Medical records;
 b. Stipulated Exhibit two (2) — North Carolina Industrial Commission forms and filings, discovery, and correspondence; *Page 3 
 c. Defendants' Exhibit one (1) — Correspondence and surveillance report dated April 17, 2007;
 d. Defendants' Exhibit two (2) — Videotape of Plaintiff's physical activity on April 13, 2007 and on April 14, 2007.
 * * * * * * * * * * * ISSUES
The issues for determination are:
1. Whether Plaintiff proved that she remains permanently and totally disabled?
2. Whether Plaintiff requires additional medical treatment?
3. Whether any of Plaintiff's current medical conditions remain causally related to her November 9, 1999 work injury?
4. Whether Mr. Joseph Rochelle, Dr. Daniel Francis Zinicola, Dr. Walter Anthony Dietzgen, and Dr. Duard Frances Fleming, Jr., should be removed as treating health care providers?
5. Whether Defendants should be ordered to pay attorney's fees under § 97-88.1 of the North Carolina General Statutes?
 * * * * * * * * * * *
Based upon the competent and the credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 44-year-old woman who suffered an admittedly compensable work injury that occurred on November 9, 1999. On November 9, 1999, Plaintiff was working for Defendant-Employer as a floral delivery truck driver. As Plaintiff was exiting Defendant-Employer's *Page 4 
delivery truck, Plaintiff did not notice that the truck was touching a live electrical wire, and when she placed her hand on the delivery truck to get out of it, she suffered an electric shock injury and fell onto the pavement. Plaintiff remained unconscious for a short amount of time. Plaintiff's co-employees soon came to help her, and to call for emergency medical personnel.
2. Plaintiff did not immediately go to the hospital, but later that day, as she continued to be in pain and began to experience tingling and swelling, she went to the Cape Fear Hospital emergency department complaining of pain in the left knee, left hip, left ankle, and left shoulder, as well as numbness and tingling in her left forearm. The medical staff at Cape Fear Hospital ultimately admitted Plaintiff to the hospital due to her electric shock injury, and discharged Plaintiff on November 11, 1999.
3. During the next six (6) months, Dr. David Stanley Bachman treated Plaintiff, and also referred Plaintiff to Dr. Afshin Tamadon for an evaluation. Dr. Bachman also performed heart monitoring on Plaintiff, because of her heart palpitations, and requested magnetic resonance imaging (MRI) of the cervical spine to be performed. The MRI revealed that Plaintiff had a right-sided disc bulge. Dr. Bachman also recommended a neuropsychological consultation with Dr. Antonio E. Puente.
4. Dr. Puente began seeing Plaintiff in 2000. Dr. Puente treated Plaintiff for post-traumatic stress disorder, for depression, and for a mood disorder. Dr. Puente noted that Plaintiff was having blackouts, motor and sensory problems, as well as cardiovascular problems. Dr. Puente performed extensive cognitive testing, and based on the results, Dr. Puente recommended psychotropic medications, psychotherapy, and biofeedback. Dr. Puente continued this treatment *Page 5 
plan on a regular basis in connection with the post-traumatic stress disorder, the pain, and the memory deficits related to Plaintiff's November 9, 1999 work injury.
5. Between the middle of 2000 through February 2002, Dr. Puente continued to treat Plaintiff for the problems related to her November 9, 1999 work injury. During this time, Dr. Puente noted that Plaintiff had blackouts, depression, post-traumatic stress disorder, chronic pain, panic attacks, and migraine headaches.
6. In early 2001, Plaintiff began having individual therapy sessions with Mr. Joseph Rochelle. The therapy helped Plaintiff to deal with a range of problems, such as anger management, depression, suicidal ideations, and anxiety. Mr. Rochelle continues to treat Plaintiff, and Defendants continue to pay for this treatment.
7. On November 8, 2001, Plaintiff started seeing Dr. Walter Anthony Dietzgen. Dr. Dietzgen initially saw Plaintiff for her neurological injury, for her post-traumatic stress disorder with possible seizures, and for her depression, all resulting from her November 9, 1999 work injury. Dr. Dietzgen also referred Plaintiff to Dr. Duard Frances Fleming, in order to have Plaintiff's seizures and chronic pain syndrome evaluated and treated. Dr. Dietzgen opined that the post-traumatic stress disorder, the depression, the anxiety, and the panic attacks from which Plaintiff suffers are all secondary to her November 9, 1999 work injury. Dr. Dietzgen opined that when Plaintiff is functioning well, she could probably do some part-time work out of her home, but that Plaintiff could not sustain employment on a regular basis, due to the severity of her medical and psychiatric conditions. Dr. Dietzgen further opined that changing or stopping Plaintiff's psychiatric treatment would be dangerous, because she might become a danger to herself or others. Dr. Dietzgen continues to treat Plaintiff, and Defendants continue to pay for this treatment. *Page 6 
8. Plaintiff began seeing Dr. Fleming on January 9, 2002. Plaintiff initially saw Dr. Fleming for her chronic pain syndrome, for her seizure issues, for her continued neck pain related to her cervical disk bulge, and for her medication needs, all related to her November 9, 1999 work injury. On October 6, 2003, Dr. Fleming noted that Plaintiff had a diagnosis of chronic post-electrocution pain syndrome involving her left leg. Dr. Fleming stated that he is making much progress with Plaintiff's treatment, and that currently, Plaintiff is having fewer seizures, is functioning better, and is more comfortable than she used to be. Dr. Fleming believes that the medications and the treatment that he provides to Plaintiff for her seizures and for her pain are both reasonable and necessary. Dr. Fleming opined that taking everything into consideration, he did not think that Plaintiff would be able to return to a full-time job as a result of her November 9, 1999 work injury. Dr. Fleming further opined that Plaintiff is unable to work because the electric shock injury that she sustained produced a physical trauma in Plaintiff that went through her nervous system and that he would give Plaintiff the benefit of the doubt with respect to both her psychiatric and her neurologic complaints. Consequently, Dr. Fleming does not believe that Plaintiff is malingering. Finally, Dr. Fleming opined that he did not doubt that Plaintiff has some psychological overture or embellishment to her pain syndrome, but that Plaintiff is, in fact, both "organically impaired" and injured as a result of the November 9, 1999 work injury. Dr. Fleming continues to treat Plaintiff, and Defendants continue to pay for this treatment.
9. Plaintiff began seeing Dr. Daniel Francis Zinicola in January 2003. Dr. Zinicola noted that Plaintiff was being seen for seizure disorder, for migraine headaches, and for major depression. Dr. Zinicola continued Plaintiff's prescriptions that originated from Dr. Fleming and from Dr. Dietzgen. Dr. Zinicola opined that Plaintiff could not work as a result of her November *Page 7 
9, 1999 work injury. Dr. Zinicola continues to treat Plaintiff, and Defendants continue to pay for this treatment.
10. Since Plaintiff's November 9, 1999 work injury, Plaintiff has also been seeking treatment from a urologist for bladder issues that occurred as a result of the November 9, 1999 injury. Defendants continue to pay for this treatment, as well.
11. On February 4, 2005 and on August 29, 2006, Plaintiff saw Dr. Anna Peacock Bettendorf. Dr. Bettendorf could not determine why Plaintiff's gait was so abnormal. Dr. Bettendorf suspected that Plaintiff had a conversion disorder. Dr. Bettendorf opined that Plaintiff "absolutely needs psychiatric and psychological treatment." Dr. Bettendorf further opined that it is possible that Plaintiff's conversion disorder could be related to Plaintiff's post-traumatic stress disorder. Finally, Dr. Bettendorf stated that it is reasonable for Plaintiff to continue treatment with a psychiatrist.
12. On October 13, 2005, on October 17, 2005, and on October 26, 2005, Plaintiff saw Dr. Christy L. Jones for psychological testing. Dr. Jones determined that the results of Plaintiff's psychological testing were inconclusive, due of lack of effort. Dr. Jones opined that electric shock injures can cause mental deficits and memory problems, but because there was little effort, Dr. Jones could not say that Plaintiff did not have any mental deficits or any memory problems.
13. On February 14, 2007, Plaintiff saw Dr. James Thaddeus Coin in order to review Plaintiff's neurological records. Dr. Coin noted that Plaintiff had some altered consciousness as a result of the November 9, 1999 work injury, followed by what he termed as "spells." Dr. Coin opined that the seizures were most likely non-epileptic, and that the seizures could be psychiatric. Dr. Coin could not determine a physiological etiology for Plaintiff's left-sided issues, but Dr. Coin did think that these left-sided *Page 8 
issues could be consistent with a conversion disorder. Dr. Coin did not review any medical records from Dr. Dietzgen or from Dr. Puente, and Dr. Coin deferred any diagnosis of a conversion disorder, or of any other psychiatric disorder, to a psychiatrist. Dr. Coin stated that based upon Plaintiff's current treatment regime, he would continue to treat Plaintiff for epileptic seizures. Dr. Coin also opined that Plaintiff's epileptic symptoms, as well as her left-sided issues, prevent her from gainful employment.
14. Defendants also retained the services of Dr. Robert LeRoy Rollins, Jr., in order to review Plaintiff's medical/psychiatric records to render an opinion regarding the causation of her medical/psychiatric conditions. Dr. Rollins did not ever examine or treat Plaintiff. Dr. Rollins opined that Plaintiff is suffering from a conversion disorder, and that Plaintiff did not sustain any physical injury at all from her November 9, 1999 work injury. Dr. Rollins does not believe that Plaintiff suffered an electric shock injury, and Dr. Rollins does not believe that Plaintiff lost consciousness as a result of the November 9, 1999 work injury. Further, Dr. Rollins opined that Plaintiff did not have an experience that would meet the criteria for post-traumatic stress disorder. Dr. Rollins agrees that Plaintiff has depression, anxiety with panic attacks, and a mood disorder, and Dr. Rollins opined that he did not think that Plaintiff would ever return to work because of the chronic nature of these conditions. Moreover, Dr. Rollins agreed that Plaintiff's current course of treatment is helpful, necessary, and appropriate. Ultimately, Dr. Rollins opined that the November 9, 1999 work injury triggered or precipitated Plaintiff's conversion disorder, and that if he had the chance to interview Plaintiff and to review all of Plaintiff's medical records, that he could make a better, more accurate assessment about her overall condition.
15. Defendants also retained the services of Mr. Anthony Wayne Enoch, a vocational rehabilitation counselor, in order to prepare a labor market survey report for Plaintiff in this case. *Page 9 
Mr. Enoch prepared a report dated July 2, 2007, consisting of employment opportunities for Plaintiff at a sedentary level of restriction. Mr. Enoch never met with Plaintiff, Mr. Enoch had no information about Plaintiff's motivation level to pursue employment, and Mr. Enoch had not read any medical/psychiatric records regarding Plaintiff's various conditions.
16. The Full Commission finds, based upon the greater weight of the evidence, that greater weight should be given to the opinions of the health care providers that have been treating Plaintiff for many years, and who continue to treat Plaintiff, including, Mr. Rochelle, Dr. Dietzgen, Dr. Fleming, and Dr. Zinicola. The Full Commission further finds based on the greater weight of the evidence, that the physical and psychological conditions for which Dr. Dietzgen, Dr. Fleming and Dr. Zinicola have treated Plaintiff are causally related to her November 9, 1999 injury by accident.
17. The Full Commission also finds, based upon the greater weight of the evidence, that Plaintiff continues to be unable to work, based upon her current injuries, all of which are due to her November 9, 1999 work injury.
18. Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under § 97-88.1 of the North Carolina General Statutes is neither proper nor justified.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 10 
1. Plaintiff suffered a compensable injury by accident arising out of and in the course and in the scope of her employment with Defendant-Employer on November 9, 1999. N.C. Gen. Stat. § 97-2(6) (2007).
2. Plaintiff's current medical treatment is causally related to Plaintiff's November 9, 1999 work injury.
3. Plaintiff continues to be temporarily and totally disabled as a result of her November 9, 1999 work injury. N.C. Gen. Stat. § 97-29
(2007).
4. Plaintiff is entitled to have Defendants pay for medical/psychiatric expenses incurred or to be incurred as a result of her November 9, 1999 work injury, as may be required to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-25 (2007).
5. The medical/psychiatric treatment Plaintiff is entitled to have Defendants pay for should include, but not be limited to, medical treatment related to Plaintiff's psychiatric issues, including, but not limited to, Plaintiff's: post-traumatic stress disorder; depression; anxiety; chronic pain; left-sided issues; and seizure disorder.
6. Plaintiff's medical/psychiatric treatment should continue to be provided by Plaintiff's current treating health care providers, including, but not limited to: Dr. Daniel Francis Zinicola; Dr. Walter Anthony Dietzgen; Dr. Duard Frances Fleming, Jr.; and Mr. Joseph Rochelle.
7. Defendants failed to prove, by the greater weight of the evidence, that Plaintiff's current medical/psychiatric problems are not related to her November 9, 1999 work injury. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005). *Page 11 
8. Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under § 97-88.1 of the North Carolina General Statutes is neither proper nor justified.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $331.25 per week for the period from November 9, 1999 and continuing until further Order of the North Carolina Industrial Commission. Defendant is given credit for compensation already paid.
2. A reasonable attorney's fee of 25 percent of the compensation awarded to Plaintiff in paragraph one (1), above, is hereby approved and shall be paid directly to Plaintiff's counsel. Every fourth (4th) payment due Plaintiff shall be deducted and paid directly to Plaintiff's counsel.
3. Plaintiff is entitled to have Defendants pay for medical/psychiatric expenses incurred or to be incurred as a result of her November 9, 1999 work injury, as may be required to effect a cure, to give relief, and/or to lessen Plaintiff's period of disability. Plaintiff's medical/psychiatric treatment should continue to be provided by Plaintiff's current treating health care providers, including, but not limited to: Dr. Daniel Francis Zinicola; Dr. Walter Anthony Dietzgen; Dr. Duard Frances Fleming, Jr.; and Mr. Joseph Rochelle.
4. Defendant shall pay the costs of these proceedings.
 This the ___ day of September 2008. *Page 12 
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ DANNY LEE McDONALD COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER *Page 1